UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

VANESSA INOA, AUGUSTA GUFFROY,
CASSIE ISZA, MICHELLE WALLS,
ANGELIQUE VELEZ, PRINCESS WALKER,
ERNESTINE SANDERS, QUINCY TILSON,
MANUEL OROZCO, HELEN HOWARD,
ALYSSA SMITH, DANIELLE CHRISTENSEN,
and LASHONTA GRIFFIN, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

    v.

GERBER PRODUCTS COMPANY,

                Defendant.

This Document Relates To:
*In Re: Gerber Products Company Heavy
Metals Baby Food Litigation, Master File No.
1:21-cv-00269-LO-TCB*

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    Plaintiffs Vanessa Inoa, Augusta Guffroy, Cassie Isza, Michelle Walls, Angelique

Velez, Princess Walker, Ernestine Sanders, Quincy Tilson, Manuel Orozco, Helen Howard,

Alyssa Smith, Danielle Christensen, and LaShonta Griffin (collectively "Plaintiffs"), by and

through their counsel, on their own behalf and on behalf of all others similarly situated, bring this

class action Complaint against Defendant Gerber Products Company ("Gerber" or "Defendant")

for deceptively misrepresenting and concealing the existence or risk of dangerous heavy metals

in its baby food products, and its related testing practices.

2.    Plaintiffs, like many parents of young and newborn children, place a premium on

only exposing their infants and young to the safest and highest quality foods available on the

market. Defendant manufactured, advertised, marketed, distributed, and sold its baby food as suitable for baby and toddler consumption, and as one of the best, safest, and healthiest options available.

3.      Gerber is a household name. The company holds itself out as "[o]ne of the most trusted names in baby food," *Gerber*, Nestlé, https://www.nestle.com/brands/allbrands/gerber (last visited Oct. 7, 2021), and represents that it is "committed to sourcing high-quality ingredient that nourish [one's] baby," *About Us*, Gerber, https://www.gerber.com/about-us (last visited Oct. 7, 2021).

4.      Plaintiffs purchased Defendant's baby and toddler food products ("Gerber Baby Foods") and fed them to their children for months or even years. Like so many parents and caretakers, Plaintiffs reasonably believed that Defendant's baby foods were safe to feed to their children.

5.      But as Plaintiffs discovered—and as Defendant already knew—Defendant has sold and marketed, and continues to sell and market, products that contain dangerous levels of heavy metals; its processes and practices are insufficient to guarantee safe products.

6.      On February 4, 2021, the United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("House Subcommittee") published a report revealing that several baby food producers sold products that contained significant and dangerous levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury in finished products and/or the product ingredients. *See* Staff of H. Subcomm. on Econ. and Consumer Policy, Comm. on Oversight and Reform, 117th Cong., *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-

04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report" or "Rept."). The Report revealed that Defendant's own internal documents and testing showed that finished baby food products and/or ingredients used in the finished baby food products contained significant and dangerous levels of arsenic, lead, and cadmium, whose levels were "multiples higher than allowed under existing regulations for other products," *see* Rept. at 2–4, and that Defendant "rarely tests for mercury in baby food," *see id.* at 4.

7.      The House Subcommittee Report followed reporting from consumer advocacy groups, including one group—Healthy Babies Bright Futures—whose commissioned testing of baby foods revealed the presence of Toxic Heavy Metals in 95 percent of products tested, including Defendant's products. *See* Jane Houlihan & Charlotte Brody, *What's in my baby food?*, Healthy Babies Bright Futures (Oct. 2019), *available at* https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.

8.      The House Subcommittee Report noted that exposing children to Toxic Heavy Metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. This exposure has real economic consequences, as one study has shown that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000. *See* Rept. at 9.

9.      On September 29, 2021, the House Subcommittee released a second report, titled, "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods." *See* Staff of H. Subcomm. on Econ. and Consumer Policy, Comm. on Oversight and Reform, 117th Cong., *New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods*,

https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby %20Food%20Report%209.29.21%20FINAL.pdf (Sept. 29, 2021) ("Second Subcommittee Report" or "Second Rept.").

10. The Second Report revealed that after the first Subcommittee Report was issued, the State of Alaska conducted testing which found that samples of Gerber's infant rice cereals contained dangerously high levels of inorganic arsenic. *Id.* at 2. Despite another baby food manufacturer recalling several similar products, and despite knowledge of the contamination, Gerber "failed to take any action" to remove the contaminated products from the market. *See id.*

11. Gerber falsely markets and represents that its food is "nutritious," "safe," "high-quality," "wholesome," and rigorously tested, while concealing the presence or risk of Toxic Heavy Metals in its products.

12. Given the Defendant's deceptive business practices and the harms such practices have caused to countless parents, caretakers, and children in the United States, Plaintiffs have brought this action and seek to represent Proposed Classes (as defined herein), who, between the beginning of any applicable limitations period and the present, purchased for personal/household use and not resale any of Defendant's Gerber Baby Foods containing or at risk of containing harmful Toxic Heavy Metals.

13. Plaintiffs' Complaint alleges claims for Defendant's violation of various state laws barring false, deceptive, or unfair acts or practices in commerce, and for unjust enrichment.

14. Plaintiffs seek injunctive and/or declaratory relief and monetary relief on behalf of the Proposed Classes including requiring the Defendant's (i) accurate disclosure of the levels of the Toxic Heavy Metals present in the baby food products sold by Defendant in its marketing, advertising, and labeling; (ii) testing of ingredients and finished products to accurately determine

the levels of Toxic Heavy Metals present in Defendant's baby food products; and (iii) restoring monies to the members of the Proposed Classes.

## PARTIES

15.     Plaintiff Augusta Guffroy is a resident and citizen of Deerfield, Illinois. Plaintiff Guffroy's daughter was born in 2019. Ms. Guffroy is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing. During the applicable statute of limitations period, Ms. Guffroy purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her daughter, Ms. Guffroy reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local grocery stores, including but not necessarily limited to the following products: 1st Foods (Prune) and Cereals (Single Grain Rice).[1] Ms. Guffroy purchased the Gerber Baby Food on information and belief between April 2020 and February 2021, and later fed such Gerber Baby Foods to her daughter. Had Ms. Guffroy known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

16.     Plaintiff Vanessa Inoa is a resident and citizen of Kissimmee, Florida. Plaintiff Inoa's daughter was born in 2019. Ms. Inoa is a dedicated and loving mother who places a

---

[1] The naming convention for the Gerber Baby Foods listed in this Complaint is not based on the exact product name as marketed by Gerber, but instead on names that will provide a succinct and clearly identifiable reference to a product sold by Gerber.

premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing. During the applicable statute of limitations period, Ms. Inoa purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her daughter, Ms. Inoa reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local Walmart, Publix and other local grocery stores, including but not necessarily limited to the following products: Organic 2nd Foods Pouches (Apple Avocado, Apple Blueberry Spinach, Apple Zucchini Spinach Strawberry, Pear Blueberry Apple Avocado, and Pear Spinach), 2nd Foods (Apple Banana with Oatmeal, Beef and Gravy, Carrot, Chicken and Gravy, Ham and Gravy, Pea, Turkey and Gravy, and Puree Favorites Variety Pack Chicken and Gravy & Turkey and Gravy), 2nd Foods Cereals (Pear Cinnamon with Oatmeal), Cereals (Single Grain Rice, Oatmeal, and MultiGrain), Lil' Crunchies (Apple Sweet Potatoes, Garden Tomato, Mild Cheddar, and Mild Cheddar Baked Corn), Puffs (Banana, Blueberry, and Strawberry), Toddler Meals (Yellow Rice & Chicken with Vegetables in Sauce), Toddler Pouches (Fruit & Yogurt Strawberry Banana, Banana Blueberry), and Teether Wheels (Banana Cream). Ms. Inoa purchased the Gerber Baby Food on information and belief between August 2019 and February 2021, and later fed such Gerber Baby Foods to her daughter. Had Ms. Inoa known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

17.     Plaintiff Cassie Isza is a resident and citizen of Mishawaka, Indiana. Plaintiff Isza's son was born in 2019. Ms. Isza is a dedicated and loving mother who places a premium on

ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing. During the applicable statute of limitations period, Ms. Isza purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her son, Ms. Isza reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local Meijer's and other grocery stores, including but not necessarily limited to the following products: Organic 1st Foods (Banana, Carrot, and Pea), Organic 2nd Foods (Mango Apple Banana), Organic 2nd Foods Pouches (Acai Berry Mixed Grain, Banana Blueberry Blackberry Oatmeal, and Mango Apple Carrot Kale), Natural 1st Foods (Pear, Green Bean), Organic BabyPops (Banana Raspberry), Organic Teethers (Mango Banana Carrot), Organic Toddler Pouches (Banana Acai Berry Mixed Grain, Banana Strawberry Raspberry Mixed Grain), Natural 2nd Foods (Natural Sweet Potato Banana Orange, Pear Carrot Pea),1st Foods (Banana, Butternut Squash, Green Bea, Pea, Prune, and Sweet Potato), 2nd Foods (Apple Banana with Oatmeal, Banana, Banana Carrot Mango, Butternut Squash, Green Bean, Pea, Sweet Potato, and Sweet Potato Turkey with Whole Grains Dinner), 2nd Foods Cereals (Chicken Rice Dinner, Pea Carrot Spinach, Pear Cinnamon with Oatmeal, and Sweet Potato Apple Pumpkin, Pumpkin), Puffs (Blueberry, Peach, Teethers (Apple Spinach), Toddler Meals (Apple Cinnamon Oatmeal & Barley Cereal, Banana & Cream Oatmeal & Barley Cereal, Chicken & Carrot Ravioli Pick-Ups, Yellow Rice & Chicken with Vegetables in Sauce). Ms. Isza purchased the Gerber Baby Food on information and belief between April 2020 and November 2020, and later fed such Gerber Baby Foods to her son. Had Ms. Isza known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that

Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

18.     Plaintiff Michelle Walls is a resident and citizen of Staten Island, New York. Plaintiff Walls' son was born in 2020. Ms. Walls is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing. During the applicable statute of limitations period, Ms. Walls purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her son, Ms. Walls reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at Target and her local grocery stores, including but not necessarily limited to the following products: Organic 1st Foods (Banana, Butternut Squash, Carrot, Orange Apple, Pea), Organic 2nd Foods (Apple Spinach Kale, Mango Apple Banana, Sweet Potato Apple Carrot & Cinnamon), Organic 2nd Foods Pouches (Apple Blueberry Spinach, Apple Carrot Squash, Banana Blueberry Blackberry Oatmeal, Banana Mango, Banana Squash, Carrot Apple Mango, Carrot Apple Pear, Pear Blueberry Apple Avocado, Pear Mango Avocado, Pear Peach Strawberry, Pear Spinach, Pear Zucchini Mango, Pumpkin Banana Carrot, Purple Carrot Banana Acai with Cardamom), Organic Incredipouch (Banana Mango), Organic Puffs (Apple, Cranberry Orange), Organic Teethers (Mango Banana Carrot), Organic Toddler Pouch (Apple Purple Carrot Blueberry with Yogurt, Banana Strawberry Beet Oatmeal, Banana Strawberry Raspberry Mixed Grain, Mango Apple Carrot Kale, Mango Peach Carrot Sweet Potato Oatmeal), Organic Yogurt Melts (Banana Strawberry, Red Berries), Natural 2nd Foods (Apple Spinach Kale, Apple Strawberry Banana, Banana Blueberry, Vanilla Custard Pudding with Banana), 2nd Foods (Apple, Apple Banana with Oatmeal, Apple Strawberry Banana, Banana, Banana Apple Pear,

Banana Blueberry, Banana Carrot Mango, Butternut Squash, Carrot, Pear Sweet Potato. Ms.
Walls purchased the Gerber Baby Food on information and belief between July 2020 and
February 2021, and later fed such Gerber Baby Foods to her son. Had Ms. Walls known what she
knows now about the Gerber Baby Foods products—that the products contained or were at risk
of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels
of Toxic Heavy Metals—she never would have purchased them or would have paid less for
them.

19.     Plaintiff Angelique Velez is a resident and citizen of Staten Island, New York.
Plaintiff Velez's son was born in 2020. Ms. Velez is a dedicated and loving mother who places a
premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing,
and developing. During the applicable statute of limitations period, Ms. Velez purchased
Defendant's Gerber Baby Foods. In making the decision about what to feed her son, Ms. Velez
reviewed and relied on product labels and other product and brand communications and
representations, and, believing the products to be safe and suitable, decided to purchase Gerber
Baby Foods at Amazon, Fresh Market, and her local grocery stores, including but not necessarily
limited to the following products: Biscuits (Arrowroot), Lil' Crunchies (Apples Sweet Potato,
Mild Cheddar, and Vanilla Maple), Lil' Biscuits Toddler Snacks, and Organic Teethers (Mango
Banana Carrot). Ms. Velez purchased the Gerber Baby Food on information and belief between
August 2020 and February 2021, and later fed such Gerber Baby Foods to her son. Had Ms.
Velez known what she knows now about the Gerber Baby Foods products—that the products
contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold
products with harmful levels of Toxic Heavy Metals—she never would have purchased them or
would have paid less for them.

20.     Plaintiff Princess Walker is a resident and citizen of Staten Island, New York. Plaintiff Walker's daughter was born in 2020. Ms. Walker is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing. During the applicable statute of limitations period, Ms. Walker purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her daughter, Ms. Walker reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local grocery stores, including but not necessarily limited to the following products: Organic 1st Foods (Banana, Butternut Squash, Pea), Organic 2nd Foods (Mango Apple Banana), Organic 2nd Foods Pouches (Banana Mango, Pear Spinach, Pear Zucchini Mango, Organic Cereal (Oatmeal Banana), Organic Coconut Water Splashers (Peach Carrot, Banana Mango Squash), Organic Grain and Grow Morning Bowl (Oats Red Quinoa & Farro with Tropical Fruits, Oats Barley and Red Quinoa with Banana & Summer Berries), Organic Grain & Grow Soft Baked Grain Bars (Raspberry Pomegranate), Organic Oat Milk Smoothie (Banana Squash Mango Pineapple, Mixed Berry Banana Beet), Organic Teethers (Blueberry Apple Beet, Mango Banana Carrot), Organic Toddler Pouches (Apple Purple Carrot Blueberry with Yogurt, Banana, Raspberry & Yogurt with Vanilla, Banana Strawberry Beet Oatmeal, Banana Strawberry Raspberry Mixed Grain), Organic Yogurt Melts (Red Berries), Natural 1st Foods (Apple, Banana, and Pear), Natural 2nd Foods (Apple Strawberry Banana), 2nd Foods (Apple Avocado Apple Strawberry Banana, Chicken and Gravy), Cereal (Banana Apple Strawberry Multigrain Hearty Bits, DHA & Probiotic Rice, Lil' Bits Oatmeal Banana Strawberry, MultiGrain), 100% Juice (Apple, Pear), Cookies (Banana), Flavor Water & Fruit Juice (Strawberry Kiwi), Lil' Crunchies (Garden Tomato, Mild Cheddar Baked Corn, Mild

Cheddar & Veggie Dip), Puffs (Banana and Strawberry Apple, Blueberry, Peach, Vanilla), Soft Baked Grain Bars (Strawberry Banana), Teethers (Banana Peach, Strawberry Apple Spinach), Yogurt Blends Snack (Banana, Strawberry). Ms. Walker purchased the Gerber Baby Food on information and belief between July 2020 and March 2021, and later fed such Gerber Baby Foods to her daughter. Had Ms. Walker known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

21.      Plaintiff Ernestine Sanders is a resident and citizen of Staten Island, New York. Plaintiff Sanders' son was born in 2020. Ms. Sanders is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing. During the applicable statute of limitations period, Ms. Sanders purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her son, Ms. Sanders reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local grocery stores, Walmart, Target, and Stop N' Shop, including but not necessarily limited to the following products: Organic Coconut Water Splashers (Mango Peach), Natural 1st Foods (Carrot), Cereal (Single-Grain Rice), Toddler Meals (Chicken & Carrot Ravioli Pick-Ups). Ms. Sanders purchased the Gerber Baby Food on information and belief between September 2020 and February 2021, and later fed such Gerber Baby Foods to her son. Had Ms. Sanders known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant

generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

22.     Plaintiff Quincy Tilson is a resident and citizen of Wilmington, Delaware. Plaintiff Tilson's son was born in 2019. Ms. Tilson is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing. During the applicable statute of limitations period, Ms. Tilson purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her son, Ms. Tilson reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local grocery stores, Shoprite, and Walmart, including but not necessarily limited to the following products: Organic 2nd Foods Pouches: (Carrot Apple Mango), Organic Toddler Pouches (Banana Acai Berry Mixed Grain, 100% Juice (Apple), 2nd Foods (Apple Strawberry Banana, Banana Apple Pear, Banana Blackberry Blueberry, Banana Carrot Mango, Banana Plum Grape, Carrot, Carrot Mango Pineapple, Green Bean, Pea, Peach, Pear, Pear Zucchini Corn, Sweet Potato, Sweet Potato Corn), Cereal (Single Grain Rice, Oatmeal Banana Probiotic Fruit and Probiotic Infant Cereal), Puffs (Banana, Peach Sweet Potato), Teethers (Mango Banana Carrot), Yogurt Melts (Banana Vanilla). Ms. Tilson purchased the Gerber Baby Food on information and belief between July 2020 and February 2021, and later fed such Gerber Baby Foods to her son. Had Ms. Tilson known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

23.     Plaintiff Manuel Orozco is a resident and citizen of Athens, Tennessee. Plaintiff Orozco's son was born in 2018. Mr. Orozco is a dedicated and loving father who places a premium on ensuring his son is healthy, and consumes food that will keep him healthy, growing, and developing. During the applicable statute of limitations period, Mr. Orozco purchased Defendant's Gerber Baby Foods. In making the decision about what to feed his son, Mr. Orozco reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at his local grocery stores, Walmart, and on Amazon, including but not necessarily limited to the following products: Organic BabyPops (Banana Raspberry), Organic Incredipouch (Banana Mango), Organic 2nd Foods Pouches (Apple Blueberry Spinach, Apple Carrot Squash, Apple Peach, Apple Zucchini Spinach Strawberry, Banana Blueberry Blackberry Oatmeal, Banana Mango, Carrot Apple Mango, Mango Apple Carrot Kale, Pear Mango Avocado, Pear Peach Strawberry, Pear Spinach, Pumpkin Banana Carrot, Purple Carrot Banana Acai with Cardamom, Squash Apple Sweet Potato), Organic Cereal (Single-Grain Rice, Oatmeal Banana), Organic Grain & Grow Soft Baked Grain Bars (Banana Mango Pineapple), Organic Oat Milk Smoothie (Banana Squash Mango Pineapple, Mixed Berry Banana Beet), Organic Toddler Pouch (Apple Purple Carrot Blueberry with Yogurt, Banana Acai Berry Mixed Grain, Banana Mango Avocado Quinoa Vanilla, Banana Raspberry & Yogurt with Vanilla, Mango Peach Carrot Sweet Potato Oatmeal), Natural 2nd Foods (Apple Strawberry Banana, Apple Zucchini Peach, Banana, Banana Blueberry, Pear Pineapple, Pear Zucchini), 2nd Foods (Apple Strawberry Banana, Banana, Banana Apple Pear, Banana Carrot Mango, Banana Orange Medley, Carrot, Carrot Sweet Potato Pea Green Bean, Pea, Peach, Pear, Sweet Potato, Sweet Potato, Corn Sweet Potato Turkey with Whole Grain Dinner), 2nd Foods Cereals (Pear Cinnamon with Oatmeal).

Mr. Orozco purchased the Gerber Baby Food on information and belief between May 2019 and February 2021, and later fed such Gerber Baby Foods to his son. Had Mr. Orozco known what he knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—he never would have purchased them or would have paid less for them.

24.     Plaintiff Helen Howard is a resident and citizen of Winston Salem, North Carolina. Plaintiff Howard's first son was born in 2016, her first daughter was born in 2017, and her second daughter was born in 2020. Ms. Howard is a dedicated and loving mother who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing. During the applicable statute of limitations period, Ms. Howard purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her children, Ms. Howard reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be suitable and safe, decided to purchase Gerber Baby Foods at her local grocery stores, including but not necessarily limited to the following products: Organic 1st Foods (Banana, Carrot), Organic 2nd Foods Pouches (Banana Mango, Pear Mango Avocado), Organic 2nd Foods (Mango Apple Banana, Sweet Potato Apple Carrot & Cinnamon), Organic Cereal (Single-Grain Rice), Natural 1st Foods (Pear), Natural 2nd Foods (Apple Strawberry, Apple Strawberry Banana, Banana Blueberry, Banana Blueberry), Natural 2nd Foods Pouches (Banana), 1st Foods (Banana, Green Beans, Pea, Peach, Pear, Sweet Potato), 2nd Foods (Apple, Apple Strawberry Banana, Banana, Banana Apple Pear, Banana Blackberry Blueberry, Banana Carrot Mango, Banana Orange Medley, Banana Plum Grape, Carrot, Carrot Sweet Potato Pea, Green Bean, Pea, Peach, Pear, Pear

- 14 -

Pineapple, Pear Zucchini Corn, Pumpkin Banana Sweet Potato, Sweet Potato Apple Pumpkin

Sweet Potato Corn), 100% Juice (Apple, Pear), Cereal (Single Grain Rice), Cookies (Banana),

Toddler Pouches (Banana Blueberry), Yogurt Melts (Banana Vanilla, Peach). Ms. Howard

purchased the Gerber Baby Food on information and belief between November 2016 and June

2017, April 2018 and October 2019, and February 2021 and April 2021, and later fed such

Gerber Baby Foods to her children. Had Ms. Howard known what she knows now about the

Gerber Baby Foods products—that the products contained or were at risk of containing Toxic

Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy

Metals—she never would have purchased them or would have paid less for them.

  25.  Plaintiff Alyssa Smith is a resident and citizen of Pure, Oklahoma. Plaintiff

Smith's son was born in 2020. Ms. Smith is a dedicated and loving mother who places a

premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing,

and developing. During the applicable statute of limitations period, Ms. Smith purchased

Defendant's Gerber Baby Foods. In making the decision about what to feed her son, Ms. Smith

reviewed and relied on product labels and other product and brand communications and

representations, and, believing the products to be safe and suitable, decided to purchase Gerber

Baby Foods at Walmart, including but not necessarily limited to the following products: Organic

1st Foods (Banana, Carrot), Organic 2nd Foods (Sweet Potato Apple Carrot & Cinnamon),

Organic 2nd Foods Pouches (Apple Peach, Apple Zucchini Spinach Strawberry, Banana

Blackberry Blueberry Oatmeal, Banana Mango, Mango Apple Carrot Kale, Pear Blueberry

Apple Avocado, Pear Mango Avocado, Pear Peach Strawberry, Pear Spinach), Organic Cereal

(Oatmeal Banana, Single-Grain Rice), Organic Fruit & Veggie Bars (Date & Carrot), Organic

Grain and Grow Morning Bowl (Oats Barley and Red Quinoa with Banana & Summer Berries),

Organic Grain & Grow Soft Baked Grain Bars (Banana Mango Pineapple), Organic Oat Milk Smoothie (Mixed Berry Banana Beet), Organic Teethers (Mango Banana Carrot), Organic Toddler Pouches (Banana Strawberry), Organic Yogurt Melts (Banana Strawberry), Natural 1st Foods (Banana, Carrot), Natural 2nd Foods (Apple Spinach Kale, Apple Strawberry Banana, Apple Zucchini Peach, Banana Blueberry, Sweet Potato Banana Orange), Natural 2nd Foods Pouches (Banana), Natural Toddler Pouches (Apple Pear Peach), 1st Foods (Banana, Green Bean, Pea, Peach, Pear, Sweet Potato), 2nd Foods (Apple Strawberry Banana, Banana, Banana Apple Pear, Banana Orange Medley, Carrot, Carrot Sweet Potato Pea, Green Bean, Pea, Peach, Pear, Pear Pineapple, Sweet Potato, Sweet Potato Apple Pumpkin, Sweet Potato Corn, Sweet Potato Turkey with Whole Grains Dinner), 2nd Foods Cereals (Pear Cinnamon with Oatmeal), 3rd Foods (Banana Blueberry Rice Pudding), 100% Juice (Apple, Apple Prune, Pear, White Grape), Puffs (Banana, Banana and Strawberry Apple), Soft Baked Grain Bars (Apple Cinnamon, Strawberry Banana), Teethers (Strawberry Apple Spinach), Toddler Foods (Peaches & cream, Strawberry Banana Fruit & Yogurt, Very Berry), Toddler Meals (Chicken & Carrot Ravioli, Banana & Cream Oatmeal & Barley Cereal), Toddler Pouches (Apple Pear Peach, Apple Sweet Potato Banana Blueberry Banana Pear Zucchini, Fruit & Yogurt Strawberry Banana), Whipped Melts (Banana Apple Blueberry), Yogurt Blend Snack (Strawberry, Strawberry Banana), Yogurt Melts (Banana Vanilla, Mixed Berries). Ms. Smith purchased the Gerber Baby Food on information and belief between September 2020 and January 2021, and later fed such Gerber Baby Foods to her son. Had Ms. Smith known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

26.    Plaintiff Danielle Christensen is a resident and citizen of Lake Havasu City, Arizona. Plaintiff Christensen's oldest was born in 2016, and her youngest was born in 2020. Ms. Christensen is a dedicated and loving mother who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing. During the applicable statute of limitations period, Ms. Christensen purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her children, Ms. Christensen reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local grocery stores, including but not necessarily limited to the following products: Organic 1st Foods (Banana, Carrot, Pea), Organic 2nd Foods (Carrot Apple Pear, Carrot Banana Mango with Millet & Quinoa, Mango Apple Banana), Organic 2nd Foods Pouches (Apple Peach, Banana Blueberry Blackberry Oatmeal, Banana Mango, Banana Squash, Carrot Apple Mango, Mango Apple Carrot Kale, Pear Blueberry Apple Avocado Pear Mango Avocado, Pear Peach Strawberry, Pear Spinach, Pumpkin Banana Carrot, Squash Apple Sweet Potato), Organic  Incredipouch (Banana Mango), Organic Grain and Grow Morning Bowl (Oats Barley and Red Quinoa with Banana & Summer Berries), Organic Smart Flow Baby Food (Apples & Summer Peaches, Veggie Power Squash Apple Sweet Potato with Turmeric), Organic Teethers (Mango Banana Carrot), Organic Toddler Pouch (Banana Mango Avocado Quinoa Vanilla, Banana Raspberry & Yogurt with Vanilla, Banana Strawberry Beet Oatmeal, Mango Peach Carrot Sweet Potato Oatmeal, Banana Strawberry Raspberry Mixed Grain), Natural 2nd Foods (Apple Spinach Kale, Apple Strawberry Banana, Apple Zucchini Peach, Banana Blueberry, Pea, Pear Carrot, Pear Guava, Pear Zucchini Squash Pear Pineapple), Natural 1st Foods (Banana, Carrot, Pear, Sweet Potato), Natural 2nd Foods Pouches (Banana), Natural

Toddler Pouches (Apple Pear Peach, Apple Sweet Potato with Cinnamon), 1st Foods (Banana, Butternut Squash, Carrot, Green Bean, Peach, Pear, Sweet Potato), 2nd Foods (Apple Banana with Oatmeal, Apple Strawberry Banana, Banana, Banana Apple Pear, Banana Blackberry Blueberry, Banana Carrot Mango, Banana Orange Medley, Carrot, Carrot Mango Pineapple, Carrot Sweet Potato Pea, Green Bean, Peach, Pear, Pear Pineapple, Pear Zucchini Corn, Sweet Potato, Sweet Potato Apple Pumpkin, Sweet Potato Corn, Sweet Potato Mango Kale, Sweet Potato Turkey with Whole Grains Dinner, Vanilla Custard Pudding with Banana), 2nd Foods Cereals (Apple Banana with Mixed Cereal), 3rd Foods (Banana Blueberry Rice Pudding), 100% Juice (Apple, White Grape), Cereal (Banana Apple Strawberry Multigrain Hearty Bits, Lil' Bits Banana Oatmeal Banana Strawberry, Oatmeal Lentil Carrots & Apples Probiotic, Oatmeal Lentil Carrots & Peas, Oatmeal Peach Apple Probiotic, Powerblend for Baby), Cookies (Banana), Lil' Crunchies (Apple Sweet Potato), Puffs (Banana, Banana and Strawberry Apple, Peach, Sweet Potato), Toddler Meals (Chicken & Carrot Ravioli Pick-Ups), Toddler Pouches (Apple Pear Peach, Apple Sweet Potato, Banana Blueberry, Banana Pear Zucchini, Fruit & Yogurt Strawberry Banana), Whipped Melts (Banana Apple Blueberry), Yogurt Blends (Banana, Peach), Yogurt Melts (Banana Vanilla). Ms. Christensen purchased the Gerber Baby Food on information and belief between June 2016 and March 2021, and later fed such Gerber Baby Foods to her children. Had Ms. Christensen known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

27.     Plaintiff LaShonta Griffin is a resident and citizen of Charleston, South Carolina. Plaintiff Griffin's son was born in 2018, and her daughter was born in 2020. Ms. Griffin is a

dedicated and loving mother who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing. During the applicable statute of limitations period, Ms. Griffin purchased Defendant's Gerber Baby Foods. In making the decision about what to feed her children, Ms. Griffin reviewed and relied on product labels and other product and brand communications and representations, and, believing the products to be safe and suitable, decided to purchase Gerber Baby Foods at her local grocery stores, including but not necessarily limited to the following products: Organic 2nd Foods Pouches (Apple Blueberry Spinach, Carrot Apple Mango), Natural 2nd Foods (Banana Blueberry), Natural Toddle Pouches (Apple), Sweet Potato with Cinnamon), 1st Foods (My 1st Fruits Starter Kit), Biscuits (Arrowroot), Cereal (Single Grain Rice, Oatmeal), Puffs (Strawberry Apple). Ms. Griffin purchased the Gerber Baby Food on information and belief between September 2018 and August 2020, and later fed such Gerber Baby Foods to her children. Had Ms. Griffin known what she knows now about the Gerber Baby Foods products—that the products contained or were at risk of containing Toxic Heavy Metals, or that Defendant generally sold products with harmful levels of Toxic Heavy Metals—she never would have purchased them or would have paid less for them.

28.     Defendant Gerber Products Company is a Michigan corporation with its principal place of business and headquarters located at 1812 North Moore Street, Arlington, Virginia. It manufactures, develops, markets, and sells Gerber Baby Foods throughout the United States.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). Defendant is a citizen of a state different from most Plaintiffs, and more than two-thirds of Class Members reside in states other than the state

of which Defendant is a citizen; there are more than 100 Class Members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

30.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b). Defendant maintains its headquarters and principal place of business in Arlington, Virginia; Defendant conducts substantial business in this State and judicial district through its marketing and sale of products; and a substantial part of the events and omissions giving rise to the alleged conduct occurred in, were directed to, and were emanated from this district.

## **FACTUAL ALLEGATIONS**

I.     **Congress's Investigations Reveal Elevated and Dangerous Levels of Toxic Heavy Metals in Defendant's Baby Food, that Defendant Knowingly Sold Baby Foods with Unsafe Levels to Consumers, and that Defendant Operates with a Lack of Transparency.**

31.     On November 6, 2019, the U.S. House Subcommittee "requested internal documents and test results from seven of the largest manufacturers of baby food in the United States," including Defendant. Rept. at 2.

32.     Defendant responded to the House Subcommittee's requests, and, along with other baby food companies, produced "internal testing policies, test results for ingredients and/or finished products, and documentation about what the company[y] did with ingredients and/or finished products that exceeded their internal testing limits." *Id.*

33.     As mentioned above, on February 4, 2021, the House Subcommittee published its Report, which found that commercial baby foods, including Gerber's, are "tainted with significant levels" of the Toxic Heavy Metals. *Id.*

34.     Gerber does not regularly test its finished baby food products for certain Toxic Heavy Metals—only ingredients. *See, e.g.*, *id.* at 13, 22. The Report cautioned that this approach risks undercounting the amount of Toxic Heavy Metals in finished baby food products, *id.* at 56–

57, and "recklessly endangers babies and children and prevents the companies from even

knowing the full extent of the danger presented by their products," *id.*; *see also* Second Rept. at

4.

35.     The Subcommittee Report showed that levels of Toxic Heavy Metals present in

certain Gerber Baby Foods—and their ingredients—produced and sold by Defendant were

"multiples higher than allowed under existing regulations for other products." *Id.* at 4. For

example:

– *Inorganic arsenic.* The United States Food and Drug Administration ("FDA")

has set a maximum allowable level of **10** parts per billion ("ppb") of inorganic

arsenic in bottled drinking water. *Id.* Gerber used ingredients that tested over

**90** ppb of inorganic arsenic. *Id.* at 3, 19. The Report noted that Gerber failed

to "provide … results for all of its ingredients." *Id.* at 19.

– *Lead.* The FDA has set a maximum allowable level of **5** ppb of lead in bottled

drinking water. *Id.* at 4. The FDA has set a maximum allowable level of **100**

ppb of lead in candy. *Id.* at 21–22. "There is a growing consensus among

health experts that lead levels in baby foods should not exceed 1 ppb." *Id.* at

21. The Report noted that Gerber submitted only "limited lead testing results."

*Id.* at 27. From the results submitted, Gerber used sweet potato with as much

as **48** ppb of lead, and "many" of its batches of sweet potato contained over **20**

ppb of lead.[2] *Id.* at 3, 27–28.

_____

[2] It is both disturbing and notable that, for comparison's sake, the 90th percentile lead level among samples collected in Flint, Michigan's water system during the Flint Water Crisis was 27 ppb. *See* Christopher Ingraham, *This is how toxic Flint's water really is*, The Washington Post,

(continued…)

- 21 -

&mdash;  *Cadmium.* The FDA has set a maximum allowable level of **5** ppb of cadmium in bottled drinking water. *Id.* at 4. As the Report revealed, "Gerber does not test all its ingredients for cadmium." *Id.* at 32. Of the test results provided, seventy-five percent of carrots used by Gerber contained greater than 5 ppb, with some as high as **87** ppb of cadmium. *Id.* at 4, 32.

&mdash;  *Mercury.* The United States Environmental Protection Agency ("EPA") has set a maximum allowable level of **2** ppb of mercury in drinking water. *Id.* at 4. One baby food producer's finished and sold baby food products contained as much as **10** ppb of mercury. As the Report revealed, Gerber "rarely tests for mercury" in its baby food products. *Id.* at 4; *see also id.* at 33.

36.  After issuance of the Subcommittee Report, the Subcommittee obtained FDA-funded test results of inorganic arsenic levels of Gerber's infant rice cereal products from the State of Alaska, and summarized the findings in a subsequent report, which revealed "dangerous levels of toxic inorganic arsenic in" such products. Second Rept. at 2. The products tested were collected from shelves between March and April of 2021, and the test results were provided to Gerber. *Id.* at 5. The Second Report also noted that Gerber "failed to take any action," despite it having products with comparable inorganic arsenic levels to another baby food manufacturer which had partially recalled some of those products. *Id.* at 2.[3]

---

Jan. 15, 2016, https://www.washingtonpost.com/news/wonk/wp/2016/01/15/this-is-how-toxic-flints-water-really-is/.

[3] From the Second Report:

> Food and Drug Administration (FDA)-funded testing conducted by the State of Alaska found that multiple samples of Beech-Nut's and

(continued…)

37.     Specifically, the Second Report revealed:

–   Gerber had rice cereal that tested up to 116 ppb of inorganic arsenic. *Id.* at 3.

–   Multiple samples averaged over 60 ppb of inorganic arsenic. *Id.* at 14.

–   Despite Gerber's knowledge of the test results, Gerber took "no … actions to protect consumers." *Id.* at 3; *see also id.* at 13–14.

–   Although it carries a higher price tag (36.4% more than standard rice cereal), Gerber's organic rice cereal also tested high for inorganic arsenic and is "dangerous." *Id.* at 3, 14–15 (citation omitted).

38.     In a statement accompanying the release of the Second Report, the Chairman of the Subcommittee stated in no uncertain terms:

> [E]ach revelation has been more damning than the last. Today's report reveals that **companies not only under-report the high levels of toxic content in their baby food, but also knowingly keep toxic products on the market.** The facts speak for themselves, and the fact of the matter is that the baby food industry has consistently cut corners and put profit over the health of babies and children.

Press Release, *Oversight Subcommittee Staff Report Reveals Alarming Levels of Toxic Heavy Metals in Even More Baby Foods*, H. Subcomm. on Econ. and Consumer Policy, Comm. on Oversight and Reform (Sept. 29, 2021), https://oversight.house.gov/news/press-

---

Gerber's infant rice cereals contained more inorganic arsenic than FDA's 100 parts per billion (ppb) limit (an already-dangerously-high standard that FDA is now lowering). Beech-Nut issued a recall but limited it to product codes associated with only two of the six samples that Alaska's testing found contained over 100 ppb. Its recall was therefore too narrow. Gerber failed to recall product associated with either of its two infant rice cereal samples that tested over 100 ppb.

Second Rept. at 2.

releases/oversight-subcommittee-staff-report-reveals-alarming-levels-of-toxic-heavy (emphasis added).

39.     The original Subcommittee Report critiqued industry self-regulation in the baby food product market, and highlighted its failures to protect consumers. The Report stated that there are "dangerously high" internal limits for Toxic Heavy Metals. Rept. at 33. As the original Subcommittee Report revealed, in some circumstances, the baby food producers even sold baby food products in excess of their own threshold standards. For example:

  – One producer set its internal arsenic, lead, and cadmium thresholds up to **<u>100</u>** ppb. That producer's tested baby food products exceeded its own thresholds and were still sold to the public. *Id.* at 13–14, 22, 31.

  – Depending on the ingredient tested, another producer set its internal arsenic and cadmium standards between **<u>100</u>** and **<u>3,000</u>** ppb. *Id.* at 4, 17–18. That producer accepted the use of ingredients that tested as high as **<u>913.4</u>** ppb of arsenic, even when the internal threshold was set at 100 ppb. *Id.* at 17. Its lead threshold was up to **<u>1,000</u>** ppb, ten times the FDA-accepted level in candy and two-hundred times the FDA-accepted level in drinking water. *Id.* at 23.

  – Another producer set internal arsenic, lead, and cadmium standards of up to **<u>200</u>** ppb for "some of its ingredients." That producer used ingredients with arsenic, lead, and cadmium contents in excess of its own internal standards, and even admitted that its internal standard was based on "theoretical calculations" and that its testing "underestimated final product toxic heavy metal levels." *Id.* at 4–5.

40.     The Subcommittee Report revealed that on August 1, 2019, one manufacturer gave a secret presentation to the FDA. The presentation revealed that testing ingredients, rather than final products, which that manufacturer did, as does Gerber, "underrepresent[ed]" Toxic Heavy Metal levels in the manufacturer's baby food products. *See id.* at 5. Indeed, **100%** of the manufacturer's baby food products had "inorganic arsenic levels … higher in the finished baby food than the company estimated they would be based on individual ingredient testing," with levels between 28–93% higher in finished products than ingredients. *Id.*

41.     The Subcommittee Report's findings were disturbing on many levels, e.g., that such harmful heavy metals could be found in such substantial amounts within baby food producers' (including Defendant's) organic and non-organic baby foods, the baby food producers' apparent knowledge of such toxic metals in their baby foods, and their apparent failure to take appropriate steps to protect the infants and young babies regularly ingesting such toxic metals.

42.     As noted in the Subcommittee Report, "[b]abies' developing brains are exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity." *Id.* at 9 (internal quotation marks and citation omitted). "The fact that babies are small, have other developing organ systems, and absorb more of the heavy metals than adults, exacerbates their risk from exposure to heavy metals." *Id.* (citation omitted).

43.     Indeed, "[t]he FDA has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children." *Id.* They have "no established health benefit" and "lead to illness, impairment, and in high doses, death." *Id.* (internal quotation marks omitted). "[E]ven low levels of harmful metals from individual food sources, can

sometimes add up to a level of concern." *Id*. at 9–10 (internal quotation marks and citation omitted).  In short, "infants and children are at the greatest risk of harm from toxic heavy metal exposure." *Id*. at 10 (citation omitted).

44.     Arsenic exposure has a "significant negative effect" on child neurodevelopment, notably in Full Scale IQ, verbal domains, and memory. *Id.* (internal quotation marks and citation omitted). Lead exposure is hazardous to children's health and "severely affects academic achievement in children." *Id.* at 11 (citation omitted). Cognitive effects that occur from lead exposure in early childhood "appear to be permanent." *Id.* Cadmium exposure "is associated with decreases in IQ, as well as the development of ADHD." *Id.* at 12. Higher mercury levels in toddlers "were positively associated with autistic behaviors among preschool age children." *Id.* at 12–13 (internal quotation marks and citation omitted).

45.     To combat the high levels of Toxic Heavy Metals found in baby food, members of Congress have introduced a bill—the Baby Food Safety Act—that would limit these Metals in infant and toddler food. *See* Baby Food Safety Act of 2021, S.1019—117th Congress (2021–2022), *available at* https://www.congress.gov/bill/117th-congress/senate-bill/1019/titles?r=3&s=1. The Baby Food Safety Act recommends initial action levels of: 10 ppb for arsenic (15 ppb for cereals); 5 ppb for cadmium (10 ppb for cereals); 5 ppb for lead (10 ppb for cereals); and 2 ppb for mercury. *Id.* The proposed standards found in the Baby Food Safety Act "were developed in consultation with experts to be more protective of babies' neurological development than current levels." Second Rept. at 10. Gerber's rice cereal tested by the State of Alaska that tested the *lowest* in inorganic arsenic still "contained four times the limit on inorganic arsenic proposed in the Baby Food Safety Act." *Id.* at 12 (citation omitted).

46.     "To this day, baby foods containing toxic heavy metals bear no label or warning to parents." Rept. at 6.

## II.     Defendant's Deceptive, Misleading, and False Communications About the Safety and Health of Its Products.

47.     As identified in the Subcommittee Report, "[b]aby food manufacturers hold a special position of public trust. Consumers believe that they would not sell products that are unsafe." *Id.* Gerber actively cultivates and profits from an image that it produces quality, safe products.

48.     Despite the disturbing results of these product and ingredient tests for Defendant's baby food products, Gerber materially advertised, labeled, and marketed its Gerber Baby Foods under its brand name as healthy, safe, suitable for babies, and helping in children's development. Gerber utilizes specific phrases in its marketing, advertising, and labels to reassure and seek parent and caretaker reliance on the fact that its foods are healthy and safe, including "trusted," "high-quality ingredients," "health and safety," "nourish," "nutritious," and "wholesome."



49.     Under the Gerber label, Defendant has held itself out to average consumers as "[o]ne of the most trusted names in baby food and baby care;" stating that Gerber "is committed to promoting good nutrition." *Gerber*, Nestlé, https://www.nestle.com/brands/allbrands/gerber (last visited Oct. 7, 2021). It represents that its "products are designed to support [a] child's developmental and nutrition needs:"

# Why Gerber?

At Gerber, our goal is the same as yours: to raise a happy, healthy baby. That's why we're committed to being your partner during those first years of parenthood. Our products are designed to help support your child's developmental and nutrition needs at each stage of her early life. And our services and tools are there to help give your child the best nutritional start. When it comes to raising a healthy, happy baby, we're in it together.



50.     Nestlé, the parent company of Gerber, has stated that it "has a rigorous process for testing finished foods." Allison Prang, *House Subcommittee Hits Baby-Food Makers Over High Metal Content*, The Wall Street J. (Oct. 1, 2021), https://www.wsj.com/articles/house-subcommittee-hits-baby-food-makers-over-high-metal-content-11633118194 (internal quotation marks omitted). This stands in contradiction to the Subcommittee Report, which suggested that Gerber does *not* regularly test its finished baby food products for certain Toxic Heavy Metals. *See, e.g.*, *id.* at 13, 22

51.     Gerber also suggests that its products are top quality and safe and do not contain harmful ingredients, failing to make any serious acknowledgements about the risk of Toxic Heavy Metals, or the findings of the Subcommittee Reports. Gerber represents that it is "committed to sourcing high-quality ingredients that nourish [one's] baby." *About Us*, Gerber, https://www.gerber.com/about-us (last visited Oct. 7, 2021). It represents that it has "stringent

quality and food safety standards for all our foods." *About our ingredients*, Gerber, *available at* https://web.archive.org/web/20200924132524/https://www.gerber.com/about/our-ingredients. Gerber also states that it "ensure[s] our fruit and veggie purees are not only nutritious, but also wholesome and safe for every tiny tummy." *Why Gerber*, Gerber, *available at* https://web.archive.org/web/20200725003913/https://www.gerber.com/about/why-gerber.

52.     At various times, Gerber has displayed the following messages about the quality of its ingredients on its website, suggesting that parents and caretakers have nothing to worry about when it comes to heavy metals, sourcing, quality control, and safety:

## KEEPING SOIL IN THE FAMILY

*Some soil can have naturally high levels of nitrates and heavy metals, which you don't want in your baby's food. That's why we created requirements for growing our fruits and veggies that are among the strictest in the world.*

. . .

## About our ingredients

At Gerber, we believe little ones deserve the very best. That's why we have stringent quality and food safety standards for all our foods. Not to brag, but many of our food safety and quality standards even exceed government requirements

We also work closely with our ingredient suppliers, some of whom have been providing ingredients to us for generations.

. . .

## Quality ingredients start here



Our babies are always being placed on pedestals...literally. Why wouldn't they get awesome fruits and veggies at their high chair? From starting with better soil to finding the right seeds, we're raising the standard. Using Clean Field Farming™ practices, we ensure our fruit and veggie purees are not only nutritious, but also wholesome and safe for every tiny tummy. Dig in, little one.

. . .



. . .

## GOOD STUFF INSIDE AND OUT

Wondering about our new look? Well, we decided to make our packaging as awesome on the outside as the real, nutritious food we put on the inside. New look, same good-for-baby ingredients and now easier than ever to find at shelf. Keep an eye out for our new look on your favorite products – arriving 2017-2018.

. . .

## ONLY THE BEST FOR BABY

- We use wholesome, delicious ingredients, many featured prominently on our new packages.
- Keep an eye out for recipe amounts on the top of all our purees, letting you know some of what's included in each little tub.
- We use rigorous Clean Field Farming™ practices to ensure that our fruit & veggie purees are not only nutritious, but also wholesome and safe for even the littlest bodies.

. . .

# Product Safety and Quality

Nestlé and Gerber are fully committed to product safety and quality. We back this commitment with strict ingredient and finished product specifications and multiple quality control test to ensure that our products comply with regulatory requiremen and are unquestionably safe for babies.

### Only high-quality ingredients

All of the ingredients in GERBER infant formula, foods and beverages are high quality. As part of our Ingredient Qualificatic Program, we work with only a select group of suppliers who me Nestlé's rigorous standards.

. . .

**Our strict standards**

We work hard to make sure we meet all the latest food safety, quality, and regulatory standards for our products, ingredients, and packaging. To ensure that we meet our consumers' expectations for quality and safety, we often set our internal standards higher than those of the US Food and Drug Administration. Partnership with our key suppliers is important to assure safety and quality. We work closely with ingredient and packaging suppliers to communicate Nestlé's high expectations—and to ensure that our suppliers conform to our strict quality and food safety guidelines. We also specifically outline transportation and delivery procedures to confirm the safety and quality of ingredients prior to use in our products.

When ingredients arrive at our manufacturing locations, they are carefully inspected to assure us that they meet our requirements. Once they are accepted into our facilities, we can trace their use through each step of the manufacturing process.

53.    In a 2017 Press Release issued subsequent to third-party reporting about baby food safety, Gerber stated that it wanted "to reassure parents that the health and safety of babies is our number one priority," and that it "*never* compromise[s] on the quality of our formulas and foods for babies and toddlers." Press Release, *Gerber Reassures Parents of the Safety and Goodness of our Baby Food and Infant Formula*, Gerber (Oct. 26, 2017), http://news.gerber.com/news/gerber-arsenic-baby-food-lead-baby-food (emphasis in original) (last visited Oct. 14, 2021). It assured parents and caretakers that "[a]ll Gerber foods meet or exceed U.S. government standards," and that "our ingredients, foods and formulas are tested regularly." *Id.*

54.    In a Press Release issued subsequent to the issuance of the Subcommittee Report, Gerber sought "to reassure parents that our foods are safe for baby." Press Release, *An Important*

*Message from Gerber*, Gerber (Apr. 9, 2021), http://news.gerber.com/news/an-important-message-from-gerber-6838794 (last visited Oct. 14, 2021). They boasted that "we have set safety and quality standards that are industry-leading and among the strictest in … the world." *Id.* In an effort to downplay the significance of potential Toxic Heavy Metals exposure from their products, Gerber stated that "[h]eavy metals are naturally found in water and soil," and listed several "steps" Gerber takes to reduce heavy metal content, including "regularly testing finished products to ensure we are delivering on our promise to deliver high-quality and safe baby food." *Id.*

55.     In response to the Second Report, Gerber doubled down that it need not take any action, misleadingly stating that "[a]ll Gerber foods have and continue to meet all applicable guidelines and limits set by the FDA." Alex J. Rouhandeh, *Toxic Baby Food 'Knowingly' Put on the Market, as Industry 'Cut Corners' for Profit: Report*, Newsweek (Sept. 30, 2021), https://www.newsweek.com/toxic-baby-food-knowingly-put-market-industry-cut-corners-profit-report-1634419 (internal quotation marks omitted). This misleadingly suggests that the FDA has robust standards that Geber follows. It does not. There are no current legally binding federal requirements that Defendant must follow and only minimal guidelines are in existence.

56.     Gerber also holds itself out to parents and caretakers as an expert on infant nutrition, further indicating that it has no reason to claim ignorance regarding the effects of Toxic Heavy Metals on child development.

57.     Gerber has an entire webpage devoted to its research approach, which states that "Nestlé and Gerber are committed to improving infant and child nutrition through innovation backed by solid research." *Our Approach to Research*, Gerber, gerber.com/research (last visited Oct. 11, 2021). The webpage highlights the Feeding Infants and Toddlers Study, which is an

initiative that seeks "to better understand young children's diets and related behaviors." *Id.*
Defendant suggests that it holds internal expertise on childhood cognitive development and states
that they work "closely with pediatricians, pediatric psychologists, speech therapists, and
occupational therapists to develop comprehensive knowledge of what's developmentally
appropriate for young children to eat." *Research*, Gerber, *available at*
https://web.archive.org/web/20200808212215/https://www.gerber.com/about/research.

58.    Gerber appears to care about nutritional data that indicates if children are "falling
short of" something in their diet, through which there is an implication that caretakers could
purchase Gerber products to supplement and fix the deficiency. *See* Press Release, *Nearly One in
Five Infants' Diets Fall Short on Iron, a Key Nutrient for Brain Development*, Gerber (June 5,
2018), http://news.gerber.com/news/nearly-one-in-five-infants-diets-fall-short-on-iron-a-key-
nutrient-for-brain-development (last visited Oct. 11, 2021) (issuing a press release about child
iron deficiency and the impact on cognitive development). But Gerber conveniently downplays
data that suggests that their own products are causing harm.

59.    Defendant states that it is "a leader is early childhood nutrition," and that
"research informs everything [it] do[es]." *See* Press Release, *Nearly One in Five Infants' Diets
Fall Short on Iron, a Key Nutrient for Brain Development*, Gerber (June 5, 2018),
http://news.gerber.com/news/nearly-one-in-five-infants-diets-fall-short-on-iron-a-key-nutrient-
for-brain-development (last visited Oct. 11, 2021).

60.    Gerber has also represented on its website that its products are "science-based"
and support "healthy growth and development:"

**Science-Based Products**

All Gerber foods for babies, toddlers and young children fit into The Gerber Nutrition Journey.



Gerber® Good Start® Formulas



Gerber® Baby Foods



Gerber® Snacks

Our stage-based products can help you feel confident that what you're giving your child supports her healthy growth and development. Backed by the world's largest private nutrition-related research facility, we continually evaluate and fine-tune the nutritional value of our products to meet the needs of babies and young children.

61.     Gerber packaging and baby food labels misleadingly omit the material fact of Toxic Heavy Metals presence or risk. Instead, Gerber labels have represented and suggest that Gerber Baby Foods are safe for consumption by children of specific ages (for example by stating that they are "all natural" and suitable for a specific age[4]):

---

[4] For example, Geber suggests that foods labelled "Sitter," would be appropriate for children aged 6–8 months; "Crawler" would be appropriate for 8–12 months.



62.     Gerber has previously stated that "it is committed to clear and transparent ingredient labeling," and suggest that it "make[s] it simple to see what's inside our baby food:"

Gerber Moms and Dads,

The labeling of baby food products has created some buzz in the media lately. As parents, we understand these kinds of stories are concerning and important, so we want to share with you the approach Gerber takes in labeling our products in order to put you at ease.

We take careful measures to ensure the quality of the products your baby eats, and how we label them is no exception. Gerber is committed to clear and transparent ingredient labeling. For example, if one of our fruit or vegetable packages lists apple as the first ingredient on the front, you'll also see apple as first in the ingredient list on the back. Ingredients are always shown in the ingredient list in order of 'amount' on every one of our fruit and vegetable purees.

To make it simple for you to see what's inside our baby food, the amounts of the main ingredients are clearly listed right on the top of our package in a way that's visual and easy to understand. You can find it now on our 2ND FOODS® fruits and veggies, and our 3RD FOODS® Lil' Bits™ recipes sold in plastic tubs, and over the next year we are putting these recipe equations on all of our pureed baby foods. Here's an example of how the top of our 2ND FOODS® Apple Blueberry looks today:

63.     Examples of Gerber's product labeling and representations are included below.

64.    Gerber's purees include labels that omit and conceal the material fact or risk of heavy metal presence. The statements Defendant makes on their labels, taken together and considered from the perspective of a reasonable consumer, represent and suggest that the food is safe and suitable for consumption by children of specific ages and stages of development. The labels have at various times highlighted that the product is "all natural," non-GMO verified, does not contain artificial colors or flavors, contains "goodness inside," and that the ingredients were grown using Clean Field Farming<sup>TM</sup> practices:







65.     On its website, Gerber states that it "ensure[s]" its purees are "nutritio[us],"

"wholesome," and "safe:"

1ST FOODS®

## Organic Carrot

**4 oz Jar (Pack of 10)**

★ ★ ★ ★ ★ 5.0  (2) Write a review

 **Supported Sitter**
4-6 months

Clean Field Farming™ – it's how we ensure our purees are not only nutrition, but also wholesome and safe for every tiny tummy.

66.     Gerber's cereals include labels that omit and conceal the material fact or risk of heavy metal presence. The statements they make on their labels, taken together and considered from the perspective of a reasonable consumer, represent and suggest that the food is safe and suitable for consumption by children of specific ages and stages of development. The labels have at various times highlighted that the product contains iron for "brain development" and "learning ability," contain "no artificial flavors or colors," are non-GMO verified, are pediatrician recommended, and market the product as "simple goodness:"






67.     Gerber has also advertised its cereal as being healthy for growth and development and providing "essential nutrition;" highlighting the healthy "nutrient blend" it contains, while omitting the fact that it has tested positive for Toxic Heavy Metals:

CEREAL

## MultiGrain Cereal - 8 oz

8 oz Container (Pack of 6)

★ ★ ★ ★ ⯪ 4.5 (12) Write a review

 Sitter
6-8 months

Provide your baby essential nutrition while exposing them to the tastes of different grains.

.  .  .

### Product highlights

**Among the foods baby eats, GERBER® Cereals are the #1 source for Iron**

**Just 2 servings a day provide 90% of baby's daily value for Iron**

· Our VitaBlocks® Nutrient blend also provides Zinc, Calcium, Vitamin C, Vitamin E and six B Vitamins for healthy growth and development.

68.     And Gerber has otherwise suggested that its cereals help with "brain development:"



When to feed baby cereal
and how it helps baby's
brain development

69.     Gerber's Puffs include labels that omit and conceal the material fact or risk of heavy metal presence. The statements they make on their labels, taken together and considered from the perspective of a reasonable consumer, represent and suggest that the food is safe and suitable for consumption by children of specific ages and stages of development. The labels have at various times highlighted that the product contains "good stuff," specific vitamins for "healthy growth," "no artificial flavors or colors," is non-GMO verified, and "helps support brain development and learning ability:"



70.     Gerber's social media pages contain additional, material representations that average consumers would reasonably rely upon to conclude that their baby would not be exposed to unsafe levels of Toxic Heavy Metals via consumption of Defendant's products.

71.     The Gerber Facebook page, which has over 5 million followers (last visited October 12, 2021), markets and advertises its products as by representing proper soil health and that Defendant engages in "strict testing:"





That its carrots are "carefully selected:"



**Gerber**
December 14, 2015 · ⚙

Our Gerber® 2nd Foods® Carrots are made with carefully selected, steam-peeled carrots for your baby: http://bit.ly/gbrcrts

That its cereals, including rice cereal, are good for "healthy growth:"



 **Gerber**
May 14, 2019 · ⚙

A healthy baby is a happy baby! Gerber Single grain cereals have Vitamins C, E, Zinc and 6 B vitamins for your LO's healthy growth and calcium to help them build healthy bones and teeth. **#AnythingforBaby #GerberBaby**

That its fruits and vegetables are "nutritious," "wholesome," and "safe:"





**Gerber**
April 16, 2020 · ⚙

· · ·

All of our Gerber Natural purees are made with real fruits and veggies and no artificial colors or flavors. It's how we know that they're not only nutritious but also wholesome and safe for every tiny tummy!

And in posts issued after the Subcommittee Report was issued, that "crops are safe, tasty, and nutritious," and that Gerber's "team of experts" is "dedicated to making sure your little one has the highest quality nutrition:"



**Gerber**
February 5 · ⚙

··

At Gerber, we work with family farmers to make sure your baby gets the best of what nature has to offer. O farmers use best in class practices like soil testing, rotating crops, and choosing peak harvest times so crops are safe, tasty, and nutritious. Our farmers feed their babies the same fruits and veggies that go into your baby's food. To learn more about our commitment to quality, visit us at www.gerber.com.



**Gerber**
February 19 · ⚙

Your baby is our number one priority. For over 90 years, our team of experts – doctors, nutritionists, dietitians, and agricultural specialists -- have been dedicated to making sure your little one has the highest quality nutrition.

100% of our foods meet all FDA requirements and our own strict standards. Every Gerber product must pass more than 100 individual quality and safety checks before they reach the store shelves. If any of our foods don't meet our standards, we don't sell them.

72.     Defendant's labeling, statements, representations, and advertising, taken and considered as a whole from the perspective of a reasonable consumer, conveyed that Gerber Baby Foods were healthy, safe, and suitable for babies to consume.

## III.   Defendant's Effort to Highlight Its Involvement in the Baby Food Council Underscores Its Misleading Behavior and that Self-Regulation is Failing to Protect Consumers.

73.     In response to the Subcommittee Report and requests for comments, Gerber has made numerous statements that downplay its knowledge, deception, and role in perpetuating harm to consumers.

74.     On one occasion, Gerber highlighted that it is a "founding member" of an initiative known as the Baby Food Council, and deflected the issue of Toxic Heavy Metals in its foods by stating that "elements in question occur naturally in the soil and water," while stressing that it already takes steps to "minimize their presence." Kevin Loria, *Baby Food and Heavy Metals: What Parents Should Do Now*, Consumer Reports (Feb. 5, 2021),

https://www.consumerreports.org/baby-food/baby-food-and-heavy-metals-advice-for-parents-a1523214531/; *see also* Press Release, *An Important Message from Gerber*, Gerber (Apr. 9, 2021), http://news.gerber.com/news/an-important-message-from-gerber-6838794 (last visited Oct. 11, 2021) ("Our collaborative efforts to further reduce the levels of heavy metals is already underway as evidenced by our being a founding member of the Baby Food Council.").

75. This statement, like Defendant's other representations, is misleading and deceptive—making it appear as though Gerber is leading a movement against Toxic Heavy Metal presence.

76. The Baby Food Council (the "Council") is an industry initiative, comprised of baby food companies, including for example, Defendant, Beech-Nut Nutrition Company, and Happy Family Organics. It was founded after scathing reporting from nonprofits and consumer groups that had begun testing and shedding light on heavy metals in baby food. *See, e.g.*, *What Are You Really Feeding Your Baby?*, Clean Label Project (Oct. 25, 2017), https://cleanlabelproject.org/blog-post/clp-infant-formula-baby-food-test/ (last visited July 7, 2021).

77. The Council was created in January 2019, in partnership with Cornell University, and the environmental non-profit, the Environmental Defense Fund. In addition to baby food companies, such as Defendant, the Council's members include Cornell University, the Environmental Defense Fund, and an alliance of non-profit organizations called Healthy Babies Bright Futures. Groups such as the American Academy of Pediatrics, the Food and Drug Administration, and the U.S. Department of Agriculture serve as technical advisors. *The Baby Food Council*, FoodChain ID, https://www.foodchainid.com/babyfoodstandard/.

78.     Cornell's webpage describing the Baby Food Council suggests that the aim of the Council is "to reduce heavy metals in the companies' products to as low as reasonably achievable." Cornell College of Agriculture and Life Science, *The Baby Food Council*, https://cals.cornell.edu/food-science/industry-engagement/other-industry-initiatives (last visited July 7, 2021).

79.     Despite being a Baby Food Council member, Defendant's own statements contradict the positions taken by other members, further indicating that Defendant's statements are self-interested, misleading, and deceptive.

80.     For example, Cornell's webpage states that "[a] best practice to reduce heavy metals in vegetable and fruit purees is to regularly test ingredients ***and products*** … to identify and resolve potential problems." *Id.* (emphasis added). As revealed in the House Subcommittee Report, Gerber regularly did not test its finished products.

81.     Cornell's webpage also notes that the Toxic Heavy Metals "occur naturally ***or from pollution in the environment*.**" Defendant, in contrast, continuously attempts to downplay the severity of heavy metals by indicating that they are "naturally occurring," which is not only misleading in and of itself because it falsely insinuates that the Toxic Heavy Metals are harmless and/or that Defendant cannot do anything to mitigate, reduce, or remedy their existence, but also fails to acknowledge that heavy metal contamination also results from pollution.

82.     Cornell's webpage further confirms that the presence of Toxic Heavy Metals "in baby food … is a concern because babies are more sensitive to their harmful impacts," and emphasizes that "[t]here is no known safe level of exposure to these metals; hence even low levels of contamination are a concern."

## CLASS ACTION ALLEGATIONS

### I.     The National Class

83.    Plaintiffs request certification pursuant to Rule 23(b)(2) and (b)(3) of a proposed injunctive and/or declaratory relief and damages class, as laid out below:

84.    All persons within the United States who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "National Purchaser Class").

### II.    The State Subclasses

85.    Plaintiffs request certification pursuant to Rule 23(b)(2) and (b)(3) of the proposed injunctive and/or declaratory relief and damages subclasses as laid out below:

**Florida**

86.    All persons within the State of Florida who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Florida Subclass").

87.    The Florida Subclass is represented by Plaintiff Vanessa Inoa.

**Illinois**

88.    All persons within the State of Illinois who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification,

excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Illinois Subclass").

89.     The Illinois Subclass is represented by Plaintiff Augusta Guffroy.

**Indiana**

90.     All persons within the State of Indiana who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Indiana Subclass").

91.     The Indiana Subclass is represented by Plaintiff Cassie Isza.

**New York**

92.     All persons within the State of New York who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "New York Subclass").

93.     The New York Subclass is represented by Plaintiffs Michelle Walls, Angelique Velez, Princess Walker, and Ernestine Sanders.

**Delaware**

94.     All persons within the State of Delaware who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Delaware Subclass").

95.     The Delaware Subclass is represented by Plaintiff Quincy Tilson.

**Tennessee**

96.     All persons within the State of Tennessee who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Tennessee Subclass").

97.     The Tennessee Subclass is represented by Plaintiff Manuel Orozco.

**North Carolina**

98.     All persons within the State of North Carolina who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "North Carolina Subclass").

99.     The North Carolina Subclass is represented by Plaintiff Helen Howard.

**Oklahoma**

100.    All persons within the State of Oklahoma who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Oklahoma Subclass").

101.    The Oklahoma Subclass is represented by Plaintiff Alyssa Smith.

**Arizona**

102.    All persons within the State of Arizona who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "Arizona Subclass").

103.    The Arizona Subclass is represented by Plaintiff Danielle Christensen.

**South Carolina**

104.    All persons within the State of South Carolina who purchased Gerber Baby Foods from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Gerber, any entity in which Gerber has a controlling interest, Gerber's officers, directors, legal representatives, successors, and assigns, and persons who purchased Defendant's Gerber Baby Foods for the purpose of resale (the "South Carolina Subclass").

105.    The South Carolina Subclass is represented by Plaintiff LaShonta Griffin.

### III.    Additional Class Allegations

106.    The number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress for injuries sustained and to obtain class wide damages and injunctive and/or declaratory relief.

107.    There are questions of law and fact raised by the named Plaintiffs' claims common to those raised by the Class(es) they seek to represent. Such common questions predominate over questions affecting only individual members of the Class(es). These include and are not limited to:

– Whether and which of Defendant's Gerber Baby Foods contain(ed) or may have contain(ed) elevated and/or dangerous levels of Toxic Heavy Metals;

– Whether Defendant knew or should have known that its Gerber Baby Foods contain or may have contained elevated and/or dangerous levels of Toxic Heavy Metals;

– Whether Defendant represented and continues to represent that its Gerber Baby Foods are healthy, safe, suitable for babies, and/or that they help in a child's development;

– Whether Defendant's representations in marketing, advertising, packaging, labeling, and other promotional materials for the Gerber Baby Foods are false, deceptive, or misleading;

– Whether Defendant represented and continues to represent that the manufacturing of the Gerber Baby Foods is subjected to rigorous testing and quality standards;

– Whether Defendant's Gerber Baby Foods are subjected to reasonable testing and quality standards;

– Whether Defendant's representations were likely to deceive a reasonable consumer;

– Whether Defendant knew or recklessly disregarded that its representations were false, deceptive, or misleading;

– Whether Defendant continued to make such representations despite knowing that such representations were false, deceptive, or misleading;

– Whether a representation that a baby food product is healthy, safe, suitable for babies, and/or that it helps in children's development is material to a reasonable consumer;

– Whether Defendant violated each state's unfair deceptive acts and practices statute (e.g., New York General Business Law §§ 349 and 350);

– Whether Defendant was unjustly enriched at the expense of the Class(es); and

– Whether Plaintiffs and Members of the Class(es) were damaged by Defendant's conduct.

108.   The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by members of the Class(es).

109.   Plaintiff Class(es) representatives will fairly and adequately protect the interests of the Plaintiff Class(es) members. Plaintiffs' counsel are unaware of any conflict of interest between the Class(es) representatives and absent Class(es) members with respect to the matters at issue in this litigation; the Class(es) representatives will vigorously prosecute the suit on behalf of the Class(es); and the Class(es) representatives are represented by experienced counsel.

Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation involving consumer protection.

110.   Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action and have committed sufficient resources to represent the Class(es).

111.   The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice. Moreover, the prosecution of separate actions by individual members of the Class(es) could result in inconsistent or varying adjudications with respect to individual members of the Class(es) and/or the Defendant.

112.   Defendant has acted or failed to act on grounds generally applicable to all Plaintiffs, necessitating injunctive relief for the Class(es).

## CAUSES OF ACTION

### CLAIM I
### Unjust Enrichment
### (on behalf of all Plaintiffs and all Classes)

113.   Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

114.   Substantial benefits have been conferred on Defendant by Plaintiffs, the National Purchaser Class, and Subclasses, through the purchase of the Gerber Baby Foods. Defendant knowingly and willfully accepted and enjoyed these benefits.

115.   Defendant either knew or should have known that the payments rendered by Plaintiffs, the National Purchaser Class, and Subclasses were given and received with the expectation that the Gerber Baby Foods and Defendant's processes would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by

Defendant. As such, it would be inequitable for Defendant to retain the benefit of these payments for Gerber Baby Foods with harmful level of Toxic Heavy Metals under the circumstances.

116.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs, the National Purchaser Class, and Subclasses.

117.    Plaintiffs, the National Purchaser Class, and Subclasses are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

118.    Plaintiffs, the National Purchaser Class, and Subclasses seek against Gerber actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**CLAIM II**
**Violation of Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201 *et seq.***
**(on behalf of Plaintiff Vanessa Inoa and the Florida Subclass)**

119.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

120.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Defendant participated in unfair, unconscionable and deceptive trade practices that violated FDUTPA as described herein.

121.    Plaintiff Vanessa Inoa and the members of the Florida Subclass are "consumers" within the meaning of Fla. Stat. § 501.203(7).

122.     Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

123.     Defendant violated Fla. Stat. § 501.204 by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive because the Gerber Baby Foods contained or had a risk of containing elevated and/or dangerous levels of Toxic Heavy Metals, and/or Defendant's testing protocols did not ensure the Gerber Baby Foods exclude ingredients that are unsafe.

124.     Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact or at risk of being adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

125.     The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Inoa and the Florida Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

126.     Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

127.     Defendant engaged and continues to engage in deceptive conduct in violation of the FDUTPA. Defendant knew or should have known that its conduct violated FDUTPA.

128.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Inoa and the Florida Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have

purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

129.    Defendant intended for Plaintiff Inoa and the Florida Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

130.    As a result of their reliance, Plaintiff Inoa and the Florida Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

131.    Plaintiff Inoa and the Florida Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM III
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. 505/1 *et seq.*
### (on behalf of Plaintiff Augusta Guffroy and the Illinois Subclass)

132.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

133.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Act. 815 Ill. Comp. Stat. 505/2.

134.    The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

135.    Defendant is a "person" as defined by ICFA 505/1(c).

136.    Plaintiff Augusta Guffroy and each member of the Illinois Subclass are "consumers," as defined by ICFA 505/1(e), because they purchased Defendant's Gerber Baby Foods.

137.    Defendant's Gerber Baby Foods are "merchandise," as defined by section 505/1(b).

138.    Defendant violated ICFA 505/2 by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive because the Gerber Baby Foods contained or had a risk of containing elevated and/or dangerous levels of Toxic Heavy Metals, and/or Defendant's testing protocols did not ensure the Gerber Baby Foods exclude ingredients that are unsafe.

139.    Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact or at risk of being adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

140.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Guffroy and the Illinois Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

141.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

142.    Defendant engaged and continues to engage in deceptive conduct in violation of the ICFA. Defendant knew or should have known that its conduct violated ICFA.

143.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Guffroy and the Illinois Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

144.    Defendant intended for Plaintiff Guffroy and the Illinois Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

145.    As a result of their reliance, Plaintiff Guffroy and the Illinois Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

146.    Plaintiff Guffroy and the Illinois Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### CLAIM IV
**Violation of Indiana Deceptive Consumer Sales Act,**
**Ind. Code § 24-5-0.5-3 *et seq.***
**(on behalf of Plaintiff Cassie Isza and the Indiana Subclass)**

147.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

148.    The Indiana Deceptive Consumer Sales Act prohibits suppliers from committing any "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

149.    Defendant's sales of its baby food products to Plaintiff Cassie Isza and the Indiana Subclass constitute consumer transactions under Ind. Code § 24-5-0.5-2(1).

150.    Defendant is a supplier of Gerber Baby Foods under Ind. Code § 24-5-0.5-2(3).

151.     Defendant violated Ind. Code § 24-5-0.5-3 by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive because the Gerber Baby Foods contained or had a risk of containing elevated and/or dangerous levels of Toxic Heavy Metals, and/or Defendant's testing protocols did not ensure the Gerber Baby Foods exclude ingredients that are unsafe.

152.     Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact or at risk of being adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

153.     The facts concealed, misrepresented, and/or omitted by Defendant were material in that Cassie Isza, the Indiana Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

154.     Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

155.     Defendant engaged and continues to engage in deceptive conduct in violation of the Indiana Deceptive Consumer Sales Act. Defendant knew or should have known that its conduct violated the Indiana Deceptive Consumer Sales Act.

156.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Cassie Isza and the Indiana Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have

purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

157.     Defendant intended for Cassie Isza and the Indiana Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

158.     As a result of their reliance, Cassie Isza and the Indiana Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

159.     On July 12, 2021, Defendant was provided notice of its breach by way of a demand letter sent by the Indiana Plaintiffs. Defendant was also provided notice months before this, by the numerous consumer class action complaints filed against it.

160.     Cassie Isza and the Indiana Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM V
### Violation of New York Deceptive Acts & Practices Act
### N.Y. Gen. Bus. Law § 349
**(on behalf of Plaintiffs Angelique Velez, Princess Walker, Ernestine Sanders, and the New York Subclass)**

161.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

162.     In its respective sales of goods throughout New York, Defendant conducts business and trade within the meaning of N.Y. Gen. Bus. Law § 349.

163.     Plaintiffs Angelique Velez, Princess Walker, Ernestine Sanders (the "New York Plaintiffs"), and the New York Subclass members, are consumers who purchased products from Defendant, and are "persons" under N.Y. Gen. Bus. Law § 349(h).

164.     The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Gerber's conduct constitutes deceptive acts or practices under this section.

165.     Defendant violated N.Y. Gen. Bus. Law § 349 by representing that its Gerber Baby Foods contained "wholesome" and "quality" ingredients that were healthy, safe, appropriate to feed to children, and/or that its testing protocols were sufficient and safe. This was deceptive, untrue, or misleading because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Gerber Baby Foods exclude ingredients that are unsafe.

166.     Defendant, including its agents and distributors, made untrue, deceptive, and misleading assertions, representations, or omissions about the alleged quality, characteristics, and nature of the Gerber Baby Foods.

167.     Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact or at risk of being adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

168.     The facts concealed, misrepresented, and/or omitted by Defendant were material in that the New York Plaintiffs, the New York Subclass, and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

169.     Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

170.     Defendant engaged and continues to engage in deceptive conduct in violation of the New York Deceptive Acts and Practices Act ("NYDAPA"). Defendant knew or should have known that its conduct violated NYDAPA.

171.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the New York Plaintiffs and the New York Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

172.     Defendant intended for the New York Plaintiffs and the New York Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

173.     As a result of their reliance, the New York Plaintiffs and the New York Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

174.     The New York Plaintiffs and the New York Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### CLAIM VI
### Violation of New York False Advertising Act
### N.Y. Gen. Bus. Law § 350
### (on behalf of Plaintiffs Angelique Velez, Princess Walker, Ernestine Sanders, and the New York Subclass)

175.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

176.     Plaintiffs Angelique Velez, Princess Walker, Ernestine Sanders (the "New York Plaintiffs"), and the New York Subclass members, are consumers who purchased products from Defendant.

177.     The New York False Advertising Act ("NYFAA") prohibits "[f]alse advertising in the conduct of any business, trade, or commerce." N.Y. Gen. Bus. Law § 350. Pursuant to N.Y. Gen. Bus. Law § 350, false advertising is defined as "advertising, including labeling, or a commodity … if such advertising is misleading in a material respect."

178.     Defendant violated N.Y. Gen. Bus. Law § 350 by representing, advertising, and labeling its Gerber Baby Foods in a manner to suggest that they were healthy, safe, appropriate to feed to children, and/or that its testing protocols were sufficient and safe. This was deceptive, untrue, or misleading because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure that Gerber Baby Foods exclude ingredients that are unsafe.

179.     Defendant, including its agents and distributors, made untrue, deceptive, and misleading assertions, representations, or omissions about the alleged quality, characteristics, and nature of the Gerber Baby Foods.

180.     Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

181.     The facts concealed, misrepresented, and/or omitted by Defendant were material in that the New York Plaintiffs, the New York Subclass, and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

182.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

183.    Defendant engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

184.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the New York Plaintiffs and the New York Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

185.    Defendant intended for the New York Plaintiffs and the New York Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

186.    As a result of their reliance, the New York Plaintiffs and the New York Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

187.    The New York Plaintiffs and the New York Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM VII
### Violation of Delaware Uniform Deceptive Trade Practices Act
### 6 Del. Code § 2531 *et seq.*
### (on behalf of Plaintiff Quincy Tilson and the Delaware Subclass)

188.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

189.    Delaware's Uniform Deceptive Trade Practices Act ("DUDTPA") prohibits a person from engaging in a "deceptive trade practice," which includes: "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) Advertis[ing] goods or services with intent not to sell them as advertised;" or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." 6 Del. Code § 2532.

190.    Defendant is a "person" within the meaning of 6 Del. Code § 2531(5).

191.    Defendant violated DUDTPA by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive, untrue, or misleading because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure that Gerber Baby Foods exclude ingredients that are unsafe.

192.    Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

193.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Quincy Tilson and the Delaware Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

194.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and could deceive a substantial portion of the consuming public.

195.    Defendant engaged and continues to engage in deceptive conduct in violation of the DUDTPA.

196.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Quincy Tilson and the Delaware Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

197.    Defendant intended for Quincy Tilson and the Delaware Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

198.    As a result of their reliance, Quincy Tilson and the Delaware Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

199.    Quincy Tilson and the Delaware Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**CLAIM VIII**
**Violation of Tennessee Consumer Protection Act**
**Tenn. Code § 47-18-101 *et seq.***
**(on behalf of Plaintiff Manuel Orozco and the Tennessee Subclass)**

200.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

201.    The Tennessee Consumer Protection Act ("TCPA"), Tenn. Code § 47-18-101 *et seq.*, protects consumers from unfair and deceptive practices and acts.

202.    Plaintiff Manuel Orozco and the Tennessee Subclass are consumers under Tenn. Code § 47-18-103(3).

203.    Defendant's Gerber Baby Foods are goods, and Defendant is a person who sold its products to Plaintiff and Tennessee Subclass members in consumer transactions as those terms are defined under Tenn. Code § 47-18-103(8), (14), (20).

204.    Tenn. Code § 47-18-104(b)(5), (7), and (9) declare the following acts or practices unlawful:

- Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

- Representing that goods are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; and

- Advertising goods with intent not to sell them as advertised.

205.    Defendant violated the TCPA by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive, untrue, or misleading because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure that Gerber Baby Foods exclude ingredients that are unsafe.

206.    Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

207.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Orozco and the Tennessee Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

208.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

209.    Defendant engaged and continue to engage in deceptive conduct in violation of the Tennessee Consumer Protection Act.

210.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Orozco and the Tennessee Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

211.    Defendant intended for Plaintiff Orozco and the Tennessee Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

212.    As a result of their reliance, Plaintiff Orozco and the Tennessee Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

213.    Plaintiff Orozco and the Tennessee Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**CLAIM IX**
**Violation of North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1 *et seq.***
**(on behalf of Plaintiff Helen Howard and the North Carolina Subclass)**

214.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

215.    The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

216.    Defendant violated N.C. Gen. Stat. § 75-1.1 by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive, untrue, or misleading because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure that Gerber Baby Foods exclude ingredients that are unsafe.

217.    Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

218.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiffs Helen Howard, the North Carolina Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

219.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

220.    Defendant engaged and continues to engage in deceptive conduct in violation of North Carolina law.

221.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Helen Howard and the North Carolina Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

222.    Defendant intended for Helen Howard and the North Carolina Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

223.    As a result of their reliance, Helen Howard and the North Carolina Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

224.    Helen Howard and the North Carolina Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM X
### Violation of Oklahoma Deceptive Trade Practices Act,
### 78 Okla. Stat. § 53 *et seq.*
### (on behalf of Plaintiff Alyssa Smith and the Oklahoma Subclass)

225.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

226.    The Oklahoma Deceptive Trade Practices Act ("ODTPA") declares "deceptive trade practices" to be unlawful, including:

–   Knowingly making a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services, 78 Okla. Stat. § 53(A)(5);

        –   Representing that goods are a particular standard, quality, or grade, or that goods are a particular style or model, if they are another, 78 Okla. Stat. § 53(A)(7); and

        –   Advertising goods or services which differ from those offered for sale, 78 Okla. Stat. § 53(A)(9).

227.   Defendant is a "[p]erson" within the meaning of the ODTPA. 78 Okla. Stat. § 52(8).

228.   Defendant violated 78 Okla. Stat. § 53 by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that their testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive, untrue, or misleading because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure that Gerber Baby Foods exclude ingredients that are unsafe.

229.   Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

230.   The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Alyssa Smith and the Oklahoma Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

231.   Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

232.     Defendant engaged and continues to engage in deceptive conduct in violation of the ODTPA.

233.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Alyssa Smith and the Oklahoma Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

234.     Defendant intended for Plaintiff Alyssa Smith and the Oklahoma Subclass to rely on their deceptive misrepresentations and omissions when purchasing Gerber Baby Foods.

235.     As a result of their reliance, Plaintiff Alyssa Smith and the Oklahoma Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

236.     Plaintiff Alyssa Smith and the Oklahoma Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### CLAIM XI
**Violation of Arizona's Consumer Fraud Act**
**Ariz. Rev. Stat. Ann. § 44-1522 *et seq.***
**(on behalf of Plaintiff Danielle Christensen and the Arizona Subclass)**

237.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

238.     The Arizona Consumer Fraud Act ("ACFA") prohibits any

> [D]eception, deceptive or unfair act or practice, fraud, false
> pretense, false promise, misrepresentation, or concealment,
> suppression or omission of any material fact with intent that others
> rely on such concealment, suppression or omission, in connection

with the sale or advertisement of any merchandise whether or not
any person has in fact been misled, deceived or damaged thereby.

Ariz. Rev. Stat. Ann. § 44-1522(A).

239.    Plaintiff Danielle Christensen and the Arizona Subclass are consumers under the
ACFA who purchased Defendant's Gerber Baby Foods.

240.    Defendant violated the AFCA by representing that its Gerber Baby Foods were
healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Gerber
Baby Foods exclude ingredients that are unsafe. This was deceptive, untrue, or misleading
because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous
levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure that Gerber Baby
Foods exclude ingredients that are unsafe.

241.    Defendant intentionally represented that the Gerber Baby Foods were of a
particular standard, grade, or quality when they were in fact adulterated and not fit for
consumption by babies. In the alternative, Defendant omitted the material fact that its processes
did not guarantee that its products were necessarily safe.

242.    The facts concealed, misrepresented, and/or omitted by Defendant were material
in that Plaintiff Christensen and the Arizona Subclass and any reasonable consumer would have
considered them when deciding whether to purchase the Gerber Baby Foods.

243.    Defendant's conduct and omissions described herein repeatedly occurred in the
course of Defendant's business and were capable of deceiving a substantial portion of the
consuming public.

244.    Defendant engaged and continues to engage in deceptive conduct in violation of
the ACFA.

245.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Christensen and the Arizona Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

246.    Defendant intended for Plaintiff Christensen and the Arizona Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

247.    As a result of their reliance, Plaintiff Christensen and the Arizona Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

248.    Defendant's misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

249.    Plaintiff Christensen and the Arizona Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### CLAIM XII
**Violation of South Carolina Unfair Trade Practices Act,**
**S.C. Code § 39-5-20 *et seq.***
**(on behalf of Plaintiff LaShonta Griffin and the South Carolina Subclass)**

250.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

251.    The South Carolina Unfair Trade Practices Act ("SCUTPA") declares all "unfair or deceptive acts or practices in the conduct of any trade or commerce … unlawful." S.C. Code § 39-5-20(a).

252.     Defendant is a "[p]erson" within the meaning of the SCUTPA. S.C. Code § 39-5-10(a).

253.     Defendant engaged in trade and/or commerce within the meaning of the SCUTPA by selling or otherwise permitting the respective Gerber Baby Foods into the stream of commerce. S.C. Code § 39-5-10(b).

254.     Defendant violated S.C. Code § 39-5-20 by representing that its Gerber Baby Foods were healthy, safe, appropriate to feed to children, and/or that their testing protocols ensure the Gerber Baby Foods exclude ingredients that are unsafe. This was deceptive because the Gerber Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Gerber Baby Foods exclude ingredients that are unsafe.

255.     Defendant intentionally represented that the Gerber Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies. In the alternative, Defendant omitted the material fact that its processes did not guarantee that its products were necessarily safe.

256.     The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff LaShonta Griffin and the South Carolina Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Gerber Baby Foods.

257.     Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

258.     Defendant engaged and continues to engage in deceptive conduct in violation of the SCUTPA.

259.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff LaShonta Griffin and the South Carolina Subclass suffering actual damages when they purchased the Gerber Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

260.     Defendant intended for Plaintiff LaShonta Griffin and the South Carolina Subclass to rely on their deceptive misrepresentations and omissions when purchasing the Gerber Baby Foods.

261.     As a result of their reliance, Plaintiff LaShonta Griffin and the South Carolina Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

262.     Plaintiff LaShonta Griffin and the South Carolina Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request for the following relief and judgment against Defendant as to each and every count, including:

A.  Define and certify the Classes as pleaded herein and give notice to all potential class members in a form and manner to be determined by the Court upon Representative Plaintiffs' motion to certify the class;

B.  Take any and all other appropriate steps to protect the rights of the Class Members as alleged herein;

C.  Award declaratory and/or injunctive relief as pleaded herein;

D.  Enjoin Defendant from selling Gerber Baby Foods until there is a guarantee that its products no longer contain unsafe levels of Toxic Heavy Metals;

E.  Award general damages pursuant to common law and by statute (e.g., N.Y. Gen. Bus. Law §§ 349 and 350) for each Representative Plaintiff and Class Member as is established at the time of trial;

F.  Award special damages pursuant to common law and by statute for each Representative Plaintiff and Class Member as is established at the time of trial;

G.  Award punitive damages pursuant to common law and by statute for each Representative Plaintiff and Class Member as is established at the time of trial;

H.  Award costs of suit, prejudgment and post-judgment interest, and attorneys' fees pursuant to each state's unfair deceptive acts and practices statute, or as otherwise allowed by law; and

I.  Award such other relief in law or in equity as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:  October 18, 2021                         Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll (VSB No. 15300)
Geoffrey A. Graber (admitted *pro hac vice*)
Douglas J. McNamara (*pro hac vice* forthcoming)
Brian E. Johnson (*pro hac vice* pending)
Paul Stephan (*pro hac vice* pending)
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave, 5th Floor
Washington, DC 20005
T: 202-408-4600
F: 202-408-4699
stoll@cohenmilstein.com
ggraber@cohenmilstein.com

dmcnamara@cohenmilstein.com
bejohnson@cohenmilstein.com
pstephan@cohenmilstein.com

Christopher K. Leung (*pro hac vice* forthcoming)
Max E. Rodriguez (*pro hac vice* forthcoming)
Alison Borochoff-Porte (*pro hac vice* forthcoming)
**POLLOCK COHEN LLP**
60 Broad St., 24th Fl.
New York, NY 10004
T: (917) 985-3995
Chris@PollockCohen.com
Max@PollockCohen.com
alison@PollockCohen.com

*Counsel for Plaintiffs and the Proposed Class*